Docket No. 101171.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* RICHARD DEVINE, Petitioner, v. HONORABLE TERRENCE SHARKEY, Respondent.

*Opinion filed June 22, 2006.*

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Justices McMorrow, Fitzgerald, and Kilbride concurred in the judgment and opinion.

Justice Karmeier specially concurred, with opinion, joined by Chief Justice Thomas and Justice Garman.

## OPINION

Pursuant to Supreme Court Rule 381(a) (188 Ill. 2d R. 381(a)), the State's Attorney of Cook County filed a motion with this court for leave to file a complaint seeking a writ of *mandamus.* We allowed the State to file the complaint. The State seeks an order compelling the Honorable Terrence Sharkey, judge of the circuit court of Cook County (respondent), to set for trial within 120 days a delinquency petition against L.J., a minor. The question before us is whether the State can utilize the speedy-trial provisions of the Juvenile Court Act of 1987 (705 ILCS 405/5–601(1) (West 2004)) to force a minor to go to trial within 120 days.

BACKGROUND

In 2004 the State brought three felony delinquency petitions against L.J. (the minor), in the juvenile division of the circuit court of Cook County. The charges were aggravated unlawful use of a weapon, burglary, and attempted first degree murder. The State elected first to proceed on the charge of attempted murder. However, in February 2005, the circuit court granted the State's petition for discretionary transfer (see 705 ILCS 405/5–805(3) (West 2004)) of that charge to the criminal division, where it remains pending.[1] The juvenile court delinquency petition was subsequently nol-prossed.

In April 2005, the State attempted to elect on the minor's unlawful use of a weapon charge and force that case to proceed to trial. Respondent, the judge before whom this motion was brought, denied the motion, expressing concern regarding the fairness of requiring the minor to prepare for two cases at once. Respondent noted that the Code of Criminal Procedure provides that the court may "upon the written motion of either party or upon the court's own motion order a continuance *** if he finds that the interests of justice so require." 725 ILCS 5/114–4(d) (West 2004). Respondent found that a continuance was appropriate and in the interests of justice, and held that the State could not unilaterally invoke the

---

[1]The State's petition for discretionary transfer and the circuit court's ruling thereon are not contained in the record before us; it appears that this proceeding took place before a different judge. The facts concerning the transfer of the attempted murder charge are taken from on-the-record statements by the attorneys and the court during the hearing on the State's speedy-trial motion. However, there does not appear to be any dispute as to the sequence of events.

speedy-trial provision of the Juvenile Court Act (705 ILCS 405/5–601(1) (West 2004)), forcing the case to trial within 120 days over the objection of the minor.

As previously noted, the State instituted this original *mandamus* action to request that this court enter an order compelling respondent to set the case for trial within 120 days. See 155 Ill. 2d R. 381(a); Ill. Const. 1970, art. VI, §4(a). Respondent has not filed a brief before this court, but the minor has filed a brief opposing the State's *mandamus* request.

## ANALYSIS

This court has discretionary original jurisdiction in *mandamus* actions. Ill. Const. 1970, art. VI, §4(a). *Mandamus* is " 'an extraordinary remedy appropriate to enforce as a matter of public right the performance of official duties by a public officer where no exercise of discretion on his part is involved.' " *People ex rel. Birkett v. Jorgensen*, 216 Ill. 2d 358, 362 (2005), quoting *Madden v. Cronson*, 114 Ill. 2d 504, 514 (1986). *Mandamus* will lie only when the movant shows " 'a clear, affirmative right to relief, a clear duty of the [public officer] to act, and clear authority in the [public officer] to comply with the writ,' " not when the act in question concerns an exercise of an official's discretion. *People v. Madej*, 193 Ill. 2d 395, 404 (2000), quoting *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 229 (1999). Further, "[w]here the writ would compel the performance of a judicial act by a lower court in pending litigation this court must necessarily consider not only whether the petitioner has shown a clear violation by the judge of a duty imposed by law but also whether issuance of the writ will be effective." *People ex rel. Carey v. Scotillo*, 84 Ill. 2d 170, 175 (1981).

The State argues that section 601 of the Juvenile Court Act clearly and unambiguously gives the State the right to unilaterally demand trial. The minor contends that this construction is erroneous and the State is improperly attempting to compel respondent to rule in the State's favor in a scheduling matter, traditionally well within a judge's discretion.

Because the instant case involves a matter of statutory construction, our review is *de novo*. See, *e.g.*, *People v. Ramirez*, 214 Ill. 2d 176, 179 (2005). Our aim is to ascertain and give effect to the true intent of the legislature, the best evidence of which is the language used in the statute itself. Where the plain language of the statute clearly reveals the legislature's intent, that intent must prevail, and no resort to other interpretive aids is necessary. However, although statutory language ought to be given its plain and ordinary meaning, we construe statutes as a whole, with each provision construed in connection with every other section. *People v. A Parcel of Property Commonly Known As 1945 North 31st Street, Decatur, Macon County, Illinois*, 217 Ill. 2d 481, 499 (2005), quoting *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997).

The State argues that this case is quite simple. Subsection (1) of section 5–601 of the Juvenile Court Act provides that "a trial must be held within 120 days of a written demand for such hearing made by any party" (705 ILCS 405/5–601(1) (West 2004)); the State is a party; therefore a trial must be held within 120 days of a written demand by the State. This argument is facially compelling. However, the minor provides a host of reasons for concluding that the answer is not nearly as clear-cut as the State suggests, which we ultimately find persuasive.

First, the minor argues that we must consider subsection (1) in context, looking to section 5–601 in its entirety, as well as the Juvenile Court Act generally. For instance, the minor points out that subsection (9) of section 5–601 provides that "Nothing in this Section prevents the minor or the minor's parents, guardian or legal custodian from exercising their respective rights to waive the time limits set forth in this Section." 705 ILCS 405/5–601(9) (West 2004). How, the minor asks, can the State's purported unilateral right to demand trial within 120 days be reconciled with the clear provision that a minor cannot be prevented from exercising his right to waive the time limits?

The State responds that the language of subsection (9) actually cuts in favor of the State, because it reveals that in the Juvenile Court Act the legislature specifies the particular parties who have a right when it chooses to do so, suggesting that the legislature truly meant "any party," including the State,

when it used that term in subsection (1). This argument fails to come to grips with the heart of the conflict between subsection (9) and the State's proffered construction of subsection (1), however. The problem is that subsection (9) gives the minor and his parents, guardians, or legal custodians an absolute and unqualified right to waive the time limits referred to in the article. This is impossible to reconcile with the State having a unilateral right to enforce the time limits.

In a similar vein, subsection (8) of section 5–601 provides that "[t]he period in which a trial shall be held *** is tolled by: (i) delay occasioned by the minor ***. Any such delay shall temporarily suspend, for the time of the delay, the period within which a trial must be held ***." 705 ILCS 405/5–601(8) (West 2004). Why would the legislature give the State a unilateral right to demand trial within 120 days but allow the minor to toll that clock through his unilateral delay? And if the minor's delay did not toll the clock, we would run up against subsection (3) of section 5–601, which provides the remedy for failure to bring the minor to trial within the specified time limits: "When no such trial is held within the time required by subsections (1) and (2) of this Section, the court shall, upon motion by any party, dismiss the petition with prejudice." 705 ILCS 405/5–601(3) (West 2004).

Moreover, subsection (2) of section 5–601 sets out the time limits for dealing with the situation when there are multiple delinquency petitions pending and the *minor* simultaneously demands trial on more than one of the charges–but there is no provision for what to do if the *State* were to demand trial on multiple charges. 705 ILCS 405/5–601(2) (West 2004). It would seem illogical for the legislature to have provided for one eventuality but not the other, if the legislature truly intended to grant the State an equal ability to demand trial.

The minor also notes that in numerous other provisions of the Juvenile Court Act the terms "party," "parties" and "any party" are used without including the State. For instance, section 1–5 of the Juvenile Court Act is entitled "Rights of parties to proceedings" but the text of that statute refers primarily to parties opposing the State, *i.e.*, "the minor who is the subject of the proceeding and his parents, guardian, legal

custodian or responsible relative who are parties respondent." Moreover, that same statute also provides that the court "shall appoint the Public Defender" (or such other counsel as may be required) to represent "any party financially unable to employ counsel." 705 ILCS 405/1–5(1) (West 2004). To accept the State's argument in the instant case–that "any party" clearly and unambiguously always includes the State–would seem to compel the unreasonable conclusion that section 1–5 would entitle the State to representation by the public defender if it could prove itself indigent. The minor also directs our attention to subsection (3) of section 1–5, which requires the circuit court to advise "the parties" of their right to appeal in the event of an adjudication of wardship (705 ILCS 405/1–5(3) (West 2004))–a situation in which only parties opposing the State would be interested in taking an appeal. See also 705 ILCS 405/5–530(2)(c) (West 2004) (discussing notice requirements in the context of "multiple parties").

Moreover, as the minor also points out, section 5–101 of the Juvenile Court Act provides that in delinquency proceedings minors "shall have all the procedural rights of adults in criminal proceedings, unless specifically precluded by laws that enhance the protection of such minors." 705 ILCS 405/5–101(3) (West 2004). But adults in criminal proceedings are not subject to the State utilizing the speedy-trial act to force them to trial over their protests–only a defendant can start the speedy-trial clock ticking by demanding trial in a criminal case. See 725 ILCS 5/103–5 (West 2002). Additionally, as respondent noted in ruling on the motion, criminal defendants have the right to continuances when "the interests of justice so require" (see 725 ILCS 5/114–4(d) (West 2004)). This right would seem to be overridden–in contravention of section 5–101(3) of the Juvenile Court Act–if the State had the unilateral right to force a delinquency petition to trial in 120 days.

Additionally, and finally, the minor observes that this case involves the circuit court's control over its own docket, a context particularly unsuited to *mandamus* relief. See *Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 57 L. Ed. 2d 504, 98 S. Ct. 2552 (1978) (denying request for *mandamus* when trial

court held a case in abeyance pending the outcome of another case and noting different standards for *mandamus* relief and simple appeals).

The State argues that our appellate court has already held that "[a]s with the Code of Criminal Procedure," the Juvenile Court Act's 120-day speedy-trial period "begins to run when either party makes a formal demand for trial." *In re A.F.*, 282 Ill. App. 3d 930, 931-32 (1996). We do not find this statement convincing. First, this was *dictum*, because in *A.F.* the court was evaluating the efficacy of a trial demand by the juvenile, not the State. Second, the court was proceeding from a faulty premise because, as previously noted, the Code of Criminal Procedure does not permit the State to start the speedy-trial clock ticking, only a defendant. See 725 ILCS 5/103–5 (West 2002). We find this precedent of no assistance in evaluating the issues before us.

The State also argues that the legislative history of the statute makes clear that the legislature's intent in establishing the speedy-trial provision was to eliminate case backlogs, specifically in Cook County. We need not here recount the history on which the State relies, because even assuming *arguendo* that the State's reading is correct, it says nothing about whether the *State* has the ability to force an individual case to trial. If there is a reason for one case not to go to trial, the State can focus its resources on preparing for trial in the numerous cases in which the minors do demand trial.

This is not a case about the State's ability to elect which case to proceed on first when there are multiple delinquency petitions pending against the same juvenile. All we are concerned with here is whether the speedy-trial provisions of the Juvenile Court Act give the State the ability to force a particular juvenile court proceeding to trial within a specific time against the minor's wishes. More specifically, given that this is a *mandamus* action, the question is whether the State has shown " 'a clear, affirmative right' " (*Madej*, 193 Ill. 2d at 404, quoting *Lewis E.*, 186 Ill. 2d at 229) to force a delinquency petition to trial against a minor's wishes, because of a "clear violation by the judge of a duty imposed by law" (*Scotillo*, 84 Ill. 2d at 175) " 'where no exercise of discretion on his part is

involved' " *(Jorgensen*, 216 Ill. 2d at 362, quoting *Madden*, 114 Ill. 2d at 514). The answer must be in the negative, given the wealth of reasons outlined above for concluding that the "any party" language in section 5–601(1) is not intended to include the State. To adopt the State's construction would conflict with other subsections of section 5–601 as well as other portions of the Juvenile Court Act. Indeed, the facial conflict with subsection (9) of section 5–601 ("Nothing in this Section prevents the minor or the minor's parents, guardian or legal custodian from exercising their respective rights to waive the time limits set forth in this Section" (705 ILCS 405/5–601(9) (West 2004))) might well alone suffice to derail the State's *mamdamus* petition. We are not required to turn a blind eye to a statute or a statutory scheme and construe a single subsection in isolation. When section 5–601(1) is viewed in context, it is clear that the term "any party" was not intended to include the State.

## CONCLUSION

For the reasons above stated, we conclude that the State's request for a writ of *mandamus* must be denied. This case involves a circuit court's control over its own docket, a matter traditionally considered to be well within its discretionary control, and the State has not shown clear entitlement to the relief it requests.

*Writ denied.*

JUSTICE KARMEIER, specially concurring:

I agree that *mandamus* will not lie in this case. I write separately because I would reach that conclusion for a reason different from the one expressed by the majority.

Unlike my colleagues, I believe that subsection (1) of section 5–601 of the Juvenile Court Act of 1987 (705 ILCS 405/5–601(1) (West 2004)) does confer upon the state the right to make a speedy-trial demand. Here, as in all cases of statutory construction, our objective is to ascertain and give effect to the intent of the legislature. *The most reliable indicator of*

legislative intent is the language of the statute. *In re S.G.*, 175 Ill. 2d 471, 480 1997. Subsection (1) of section 5–601 expressly provides:

> "When a petition has been filed alleging that the minor is a delinquent, a trial must be held within 120 days of a written demand for such hearing made by *any party*, except that when the State, without success, has exercised due diligence to obtain evidence material to the case and there are reasonable grounds to believe that the evidence may be obtained at a later date, the court may, upon motion by the State, continue the trial for not more than 30 additional days." (Emphasis added.) 705 ILCS 405/5–601(1) (West 2004).

Although the word "any" has a diversity of meanings depending on the context in which it is used, its primary definition is "one indifferently out of more than two" or "one or more indiscriminately from all those of a kind." Webster's Third New International Dictionary 97 (1976). Consistent with this definition, it is synonymous with "either," "every" or "all." Black's Law Dictionary 94 (6th ed. 1990).

In proceedings such as this to adjudicate whether a minor is delinquent, the State is the petitioner. 705 ILCS 405/5–520 (West 2004). As such, it is unquestionably a "party." Because the clear and unambiguous language of section 5–601(1) of the Juvenile Court Act expressly permits "any party" to file a speedy-trial demand, and because "any" means "one indifferently out of more than two" or "one or more indiscriminately from all those of a kind" and is synonymous with "either," "every," or "all," it necessarily follows that the State is among those parties entitled to file a written trial demand under the law.

The majority rejects this conclusion, holding that "any party" actually means "any party except the State." Such a construction is untenable. Where, as here, a legislative enactment is clear and unambiguous, a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990).

Where the General Assembly intended to distinguish different categories of parties or differentiate the State from other parties to a proceeding governed by the Juvenile Court Act, it did so. For example, in contrast to section 5–601(1), section 1–15 of the Act (705 ILCS 405/1–15 (West 2004)), dealing with waiver of objections to venue, is addressed not to "any party," but to "a party respondent." Section 1–5 of the Act (705 ILCS 405/1–5 (West 2004)), governing rights of parties to proceedings, refers to "the minor who is the subject of the proceeding and his parents, guardian, legal custodian or responsible relative who are parties respondent." Section 5–601(2) (705 ILCS 405/5–601(2) (West 2004)) speaks of the "minor respondent"; while section 5–705(3) (705 ILCS 405/5–705(3) (West 2004)), pertaining to motions for continuances in connection with sentencing, lists "the State's Attorney, a parent, guardian, legal custodian, or counsel." Other instances of differentiation between types of parties are common. See, *e.g.*, 705 ILCS 405/2–22(2), 3–26(7) (West 2004).

That the legislature distinguished between parties when it intended to is nowhere more evident than in section 5–601(1) itself. As the text quoted above shows, after conferring on "any party" the right to make a speedy-trial demand, it immediately establishes an exception to the hearing deadline which may be invoked only by the State. Given the structure of that passage, a generic reference to parties followed by a specific exclusion for the State, it is clear that term "any party" was intended to embrace the State, as well as the minor, and the minor's parents, guardian, legal custodian or responsible relative who are parties respondent.

The formulation employed by the General Assembly Act in section 5–601(1) is identical to that used in section 3–16(b)(1)(A) of the Act (705 ILCS 405/3–16(b)(1)(A) (West 2004)), governing adjudicatory hearings for minors requiring authoritative intervention, and section 4–13(b)(1)(A) of the Act (705 ILCS 405/4–13(b)(1)(A) (West 2004)), pertaining to adjudicatory hearings for minors alleged to be addicts. Under those provisions, which took effect January 1, 1988, "any party" has the right to make a speedy-trial demand, just as

"any party" has a right to make a speedy-trial demand under section 5–601(1) of the Act governing trials for minors alleged to be delinquent.

In construing the language of these provisions, it is important to note that prior to January 1, 1988, sections 3–16 and 4–13 of the Act were phrased differently. Under the earlier version of those laws, the speedy-trial period began automatically upon the filing of petitions alleging that a minor required authoritative intervention or was an addict. See 705 ILCS 405/3–16(a)(1), 4–13(b)(1)(A) (West 2004). Because the act of filing was the triggering event, whoever was the petitioner could determine, through the timing of its filing, when the hearings would be held. Under that law, the petitioner could be any of a variety of persons and entities, including the State. See 705 ILCS 405/3–15, 4–12 (West 2004). Accordingly, any of those persons and entities, including the State, could, by filing the petition, start the clock running on the speedy-trial period.

When the legislature amended sections 13–16 and 14–13 of the Juvenile Court Act effective January 1, 1988, it did not restrict the category of persons or entities who could cause the speedy-trial period to begin. The new system simply alters how the speedy-trial period is triggered. Instead of relying on the mere act of filing, the law now requires that a separate written demand be made.

The same is true of section 5–601(1) of the Act. Until the statute was amended in the mid-1980s, the statutory hearing deadline automatically commenced when the delinquency petition was filed, regardless of who filed it. No written speedy-trial demand was necessary. See Ill. Rev. Stat. 1985, ch. 37, par. 704–2. The new version of the law simply requires that a speedy-trial demand be made before the hearing clock begins to run. As with the new versions of sections 13–16 and 14–13, it in no way restricts the class of persons or entities who may cause the speedy-trial period to begin. The State could start the clock before by filing the petition. It can still start the clock. The only difference is that, now, a written demand is necessary.

In justifying its refusal to follow the plain and unambiguous language of section 5–601(1), the majority asserts that permitting the State to demand a speedy trial would conflict with section 5–601(9) of the Act (705 ILCS 405/5–601(9), which states that "[n]othing in this Section prevents the minor or the minor's parents, guardian or legal custodian from exercising their respective rights to waive the time limits set forth in this Section." The majority's argument is premised on the assumption that the option of not demanding trial within 120 days is the same as having absolute authority to prevent the commencement of trial until more than 120 days have elapsed. In other words, they read section 5–601(9) of the Act to mean "if I don't ask for it, you can't have it." The linguistic and logical steps necessary to reach this construction are not explained, and, frankly, I do not understand them. An abstention is not a veto.

In my view, there is no conflict between sections 5–601(1) and 5–601(9). That one party has authority to waive a statutory right does not mean that the right may not be asserted by any of the other parties in the case. Waiver is merely the intentional abandonment or relinquishment of a known right. *People v. Blair*, 215 Ill.2d 427, 444 n.2 (2005). It does not entail, and has never been understood to entail, the power to insist that the right not be exercised by others who have an equal entitlement to invoke it.

It is clear from their opinion that what really concerns my colleagues is the prospect that a minor will be forced to trial before he or she is prepared to proceed. What the majority fails to recognize, however, is that even if "any party" is construed to mean "any party except the State," this potential remains. Delinquency cases, after all, are not simply bilateral proceedings involving a minor and the State. Parents, guardians and legal custodians are also involved, and they possess the same status as parties under the statute as the affected minors. That means they also have the same speedy-trial rights as minors do under section 5–601(1) of the Juvenile Court Act.

Needless to say, a parent's interests with respect to the conduct and outcome of delinquency proceedings are separate

˘12˘

and distinct from those of the minor. It is entirely possible that a parent may wish prompt resolution of a delinquency proceeding where the child does not. Under section 5–601(1), such a parent, as a party, would have every right to demand a speedy trial even if the child were perfectly content to waive his or her own speedy-trial rights and defer the proceedings until later.

The only way to prevent that from happening would be to say that the definition of "any party" in section 5–601(1) is limited to the minor and the minor alone. In other words, it would require this court to hold that when the legislature said that all of the parties could demand a speedy trial, it actually meant just the opposite, namely, that only one of the parties–the minor–could make a speedy-trial demand. Such a result would be indefensible under any recognized principles of statutory construction.

The majority suggests that treating the State as a "party" would yield some absurd and unreasonable results. The examples it gives pertain to the right to appointment of counsel and the obligation to advise parties of their right to appeal from an adjudication of wardship. Without addressing the particulars of those arguments, I would note simply that to the extent that the references to "parties" may be broader than necessary in these examples, the overbreadth is completely inconsequential. As a practical matter, it does no harm. It has no effect. Accordingly, it provides no justification for ignoring the plain and unambiguous language of section 5–601(1).

Under the prior version of the law, when the speedy-trial period commenced automatically upon filing of the petition, the rigidity of the speedy-trial deadlines was ameliorated by a judicial construction of the statute which read the time period as directory rather than mandatory. See *In re Armour*, 59 Ill. 2d 102 (1974) (construing Ill.Rev.Stat. 1971, ch. 37, par. 704–2). Under more recent precedent (*In re S.G., 175 Ill.2d at 481-82 and in light of subsequent revisions to the statute*, such a construction of the law is no longer valid. That does not mean, however, that once the State or any other party files a written speedy-trial demand, the minor is at the mercy of a fixed and unyielding trial date. As the majority correctly points out, minors

in delinquency proceedings are, at a minimum, entitled to all the procedural rights of adults in criminal proceedings (see 705 ILCS 405/5–101(3) (West 2004)), including the right to continuances when the interests of justice so require (see 725 ILCS 5/114–4(d) (West 2004)). Where the minor involved in such a proceeding seeks and obtains a continuance, thereby delaying the trial, and the delay is deemed to be attributable to the minor, the speedy-trial period, if commenced by a written demand, will be tolled. Section 5–601(8) of the Juvenile Court Act (705 ILCS 405/5–601(8) (West 2004)) expressly so states. That is so regardless of which party filed the speedy-trial demand. Under the clear language of section 5–601(8), the statutory trial period is tolled whenever there is delay occasioned by the minor. Who initially triggered the speedy-trial period is irrelevant.

For the foregoing reasons, the circuit court in this case erred when it opined that the State was not among the parties entitled to make a speedy-trial demand under section 5–601(1) of the Juvenile Court Act. The State did have the right to demand a speedy trial. That right, however, was not unconditional. Where the request for a speedy trial is opposed by the minor, as it was in this case, the court has the discretion to delay the proceedings and continue the case when the interests of justice require.

The record before us shows that the circuit court believed that it would be unduly burdensome on the minor to force him to trial on the delinquency petition while his prosecution on adult charges was underway. Whether one agrees with the circuit court's assessment or not is of no consequence. For purposes of the matter before us today, the salient point is that this was a determination which the court had the discretion to make. Under Illinois law, the exercise of discretion is not subject to review by a writ of *mandamus*. *International Harvester Co. v. Goldenhersh*, 86 Ill.2d 366, 369 (1981). It is for this reason that the State's request for a writ of *mandamus* should be denied.


CHIEF JUSTICE THOMAS and JUSTICE GARMAN join in this special concurrence.